

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

September 12, 1950

Hon. V. C. Marshall
Executive Director
Texas State Soil
  Conservation Board
Temple, Texas

Opinion No. V-1106.

Re: Availability of funds
    granted to a soil conser-
    vation district by H.B.
    97, Acts 51st Leg., R.S.
    1949, ch. 540, p. 1000,
    for payment of premiums
    on surety bonds of the
    district's employees and
    officers who are entrusted
    with funds or property.

Dear Sir:

Your request for an opinion reads in part as follows:

> "We desire the opinion of your office regarding the legality of payment of bond premiums by Soil Conservation District Supervisors out of funds provided in House Bill 97, Acts of the 51st Legislature, Regular Session 1949.
>
> "We are advised that some district supervisors have paid bond premiums out of state grants to the district and other supervisors question such authority. Soil Conservation Districts have had no grants of funds other than those received as provided in House Bill 97.
>
> "It is the feeling of this board that since House Bill 97 requires that any member of the board or its employees entrusted with property or funds be bonded in an amount fixed by the board, that unless there is some prohibition elsewhere of which we have no knowledge, that to provide proper safeguard for state funds supervisors should use any available funds to pay for the bond protection required.
>
> "State Warrants, as such, are not involved here as House Bill 97 provides that checks drawn on

the depository of the district, signed by the
chairman and secretary of the board, are to be
used in meeting obligations of the district.

"It seems that House Bill 97 neither authorizes
nor prohibits the payment of required bond
premiums from the funds granted to the district,
but does require that such bond be procured."

Soil conservation districts created under the pro-
visions of Article 165a-4, Vernon's Civil Statutes, are
political subdivisions of the State, bodies politic and cor-
porate, performing governmental functions. Atty. Gen. Op.
V-999 (1950). Section 6 of this statute provides for the
election of five (5) supervisors in each district who shall
constitute the governing board of the district; directs the
board to elect from its membership a chairman, vice-chairman,
and secretary; and empowers the board to employ such officers,
agents, and employees, permanent and temporary, as it may re-
quire, and shall determine their qualifications, duties, and
compensation. This section also provides:

"The supervisors shall provide for the exe-
cution of surety bonds for all employees and of-
ficers who shall be entrusted with funds or prop-
erty."

House Bill 97, Acts 51st Leg., R.S. 1949, ch. 540,
p. 1000, grants to the soil conservation districts of this
State the sum of $2,500,000 for each year of the current bien-
nium, subject to certain restrictions on the expenditure there-
of. The money so granted and appropriated to such districts
was undoubtedly for the purpose of enabling them as political
subdivisions of the State, bodies politic and corporate, and
as agencies of the State to perform the governmental functions
authorized by Article 165a-4.

Sections 1, 2, 3, 4, and 6 of the appropriation bill
under consideration provide, respectively, as follows:

Sec. 1. "All grants to soil conservation
districts shall be made by the State Soil Conser-
vation Board based on the Board's determination
of equity and need of the district applying for
grant."

Sec. 2.  "Approval of all grants to soil conservation districts as provided for in this Act shall be certified to the State Comptroller of Public Accounts by the State Soil Conservation Board.  Such certification of approval by the State Soil Conservation Board presented to the said Comptroller shall be sufficient authority for the Comptroller to issue his warrant against any appropriation made for grants to soil conservation districts, and shall also be sufficient authority for the State Treasurer to honor payment of such warrants."

Sec. 3.  "An annual audit of the accounts of receipts and disbursements together with an inventory of supplies and equipment of all districts receiving grants, as is provided in this Act, shall be made by the State Auditor and efficiency expert.  A maximum fee for the auditing of the accounts of a district shall be set up by the State Auditor and efficiency expert bearing as nearly as possible the actual expense incurred in making such audits.  The expense of the audit shall be paid by each soil conservation district involved <u>out of local funds</u>.  A report of such audits shall be made available to the Governor of the State, to the State Soil Conservation Board, and the Members of the Legislature."

Sec. 4.  "The supervisors of soil conservation districts shall provide for the execution of surety bonds for all employees and officers who shall be entrusted with funds or property <u>in such amounts as may be fixed by said supervisors</u>, . . ."   (Emphases added.)

Sec. 6.  "Grants to soil conservation districts as provided in this Act, when received by the district, shall be deposited in the name of the district; such deposit shall be with a State or National bank or banks.  Any withdrawal of such funds so deposited to the credit of the district may be withdrawn only on approval of the board of supervisors of the district.  All checks or orders for such withdrawal shall be signed by the chairman and secretary of the board of supervisors of the district."

We have been informed by the State Comptroller of Public Accounts that each soil conservation district whose application for a grant had been approved and certified to him by the State Soil Conservation Board had been issued a warrant on the State Treasury for the amount so certified. We presume the governing board of each such district has deposited the amount so received in some bank or banks to its credit in compliance with the provisions of Section 6.

Before we can answer your question it must first be determined whether the statute or House Bill 97 makes the payment of premiums on such surety bonds the responsibility of the districts.

It will be observed that both Section 6 of the statute and Section 4 of House Bill 97 provide:

"The supervisors shall provide for the execution of surety bonds _for_ all employees and officers who shall be entrusted with funds or property." (Emphasis added.)

This language does not provide for the execution of surety bonds _by_ such employees and officers, but does provide: "The supervisors shall provide for the execution of surety bonds _for_ all employees and officers who shall be entrusted with funds or property." (Emphasis added.) The usual and ordinary meaning of the verb "provide" is "to supply or furnish." 34 Words and Phrases, (Perm. Ed. 1940.) 666. "The power to provide includes the power to purchase." Dancy v. Davidson, 183 S.W.2d 195 (Tex. Civ. App. 1944, error ref.). The preposition "for" has several meanings, including "on account of;" "in favor of;" "in behalf of." Webster's New International Dictionary, (2d Ed.) 1938. The Legislature is presumed to have intended that the words "provide" and "for" be given their usual and ordinary meaning. Therefore, it has required the governing board of each soil conservation district to supply or furnish surety bonds for its employees and officers who shall be entrusted with funds or property and to pay the premiums thereon.

Having reached the conclusion that payment of premiums on surety bonds provided by a district for a certain class of its employees and officers is the responsibility of the district it becomes necessary to determine whether such premiums may be paid out of the money granted to the district by House Bill 97.

Section 7 of the statute and Subsection F, Section 4 of House Bill 97 each specifically authorize the governing board of a soil conservation district "to accept donations, gifts, and contributions in money . . . from this State or any of its agencies, and to use or expend such monies. . . or other contributions in carrying on its operations."

Section 3 of House Bill 97 specifically provides that each district shall pay out of its local funds the actual expenses incurred by the State Auditor in making an annual audit of the district. This provision clearly prohibits a district from paying such expenses out of the money granted to it by the State. Section 4 of House Bill 97 requires the governing board of each district to provide surety bonds for all of its employees and officers who shall be entrusted with funds or property, but does not provide that the premiums on such bonds shall be paid out of "local funds" of the district.

Since the Legislature did not provide in Section 4 that premiums on surety bonds should be paid by each district out of its local funds, and since we have found no provision in the statute or in House Bill 97 requiring the payment of such premiums out of any particular fund, we think it necessarily follows that the money granted to each district by House Bill 97 may be used for the payment of premiums on such surety bonds.

## SUMMARY

The governing boards of soil conservation districts may pay premiums on surety bonds provided by them "for all employees and officers who shall be entrusted with funds or property" out of funds granted to the districts by House Bill 97. (Acts 51st Leg., R.S. 1949, ch. 540, p. 1000).

Yours very truly,

APPROVED:

C.K. Richards
Trial & Appellate Division

Everett Hutchinson
Executive Assistant

Charles D. Mathews
First Assistant

BWB:wb

PRICE DANIEL
Attorney General

By Bruce W. Bryant
Assistant